# UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF LOUISIANA

JUDY SCHILLING      CIVIL ACTION NO. 3:12-CV-0661-SDD-SCR

**VERSUS**

**LOUISIANA DEPARTMENT OF
TRANSPORTATION AND
DEVELOPMENT**

---

## JOINT JURY INSTRUCTIONS

---

   **NOW INTO COURT**, through undersigned counsel, comes the Plaintiff, Judy Schilling, and the Defendant, Louisiana Department of Transportation and Development, who, in connection with the trial of this matter and pursuant to this Court's Order (R. Doc. 60), respectfully submit the attached Joint Jury Instructions.

            **RESPECTFULLY SUBMITTED:**


/s/J. Arthur Smith, III     /s/Margaret A. Collier_____
**J. ARTHUR SMITH, III**    **MARGARET A. COLLIER (TA)**
La. Bar Roll No. 07730     La. Bar Roll No. 33790
**ADRIENNE D. RACHEL**    **DAVID G. SANDERS**
La. Bar Roll No. 34391     La. Bar Roll No. 11696
**SMITH LAW FIRM**     **ASSISTANT ATTORNEY GENERAL**
830 North Street      **DEPARTMENT OF JUSTICE**
Baton Rouge, Louisiana 70802  **LITIGATION DIVISION**
Telephone: (225) 383-7716   1885 North Third Street, 4th Floor
Facsimile: (225) 383-7773   Post Office Box 94005
E-mail: jasmith@jarthursmith.com Baton Rouge, Louisiana 70804-9005
E-mail: arachel@jarthursmith.com Telephone: 225-326-6300
**COUNSEL FOR PLAINTIFF**  Facsimile: 225-326-6495
           E-Mail: collierma@ag.state.la.us
           E-Mail: sandersd@ag.state.la.us
           **COUNSEL FOR DEFENDANT**

## JURY INSTRUCTION NO. 1

### 3.1 General Instructions For Charge
from the 5th Circuit's Pattern Jury Instructions - Civil

## JURY INSTRUCTION NO. 2

## STIPULATIONS OF FACT[1]

The parties have agreed, or stipulated to the following facts. This means that both sides agree that these are facts in this case. You must therefore treat these facts as having been proved.

(1)     Plaintiff, Judy Schilling (Schilling), was employed by the Defendant, Louisiana Department of Transportation and Development (DOTD) as an Accounting Specialist II at District 62 in Hammond, Louisiana.

(2)     Schilling had been employed by the DOTD since October 6, 1997.

(3)     Schilling made four (4) requests for accommodations: 1) designated handicapped parking space in the rear of the office building; 2) a modified work schedule; 3) permission to wear slipper-like shoes to work; and 4) a sound barrier to her office.

(4)     Sheila Tate was appointed as the District 62 Assistant District Administrator of the Business Office on August 17, 2007.

(5)     On March 7, 2008, Dr. Sean Shannon, Schilling's treating Rheumatologist, sent a Note to Defendant requesting that Schilling be provided with a sound barrier.

(6)     On April 21, 2008, Dr. Sean Shannon sent a Note to DOTD requesting that Schilling be provided with a sound barrier and an adjusted work schedule.

(7)     On or about March 17, 2008, Dr. Karen Carter, Schilling's treating Chiropractor, sent a note to DOTD requesting that Schilling be allowed to wear slipper-like footwear to work.[2]

---

[1] Fifth Circuit Pattern Jury Instructions 2.3 (2006).

(8)     Ronda Rylatt, Schilling's second-line supervisor, requested that Schilling provide a statement from her doctor regarding her need for a change in her work schedule.

(9)     On October 23, 2008, Sheila Tate informed all employees of the Business Section that, effective November 3, 2008, their schedules would all be changed to eight (8) hour days, five (5) days per week.

(10)    On March 29, 2012, Connie Standige issued a Pre-Deprivation Notice of Removal to Schilling.

(11)    Schilling filed a charge of discrimination with the U.S. Equal Employment Opportunity Commission's (EEOC) New Orleans Field Office on April 15, 2009 alleging disability discrimination and retaliation.

(12)    A Notice of Right to Sue Letter from the U.S. Department of Justice dated June 21, 2012 was issued in connection with Schilling's first charge of discrimination with the EEOC.

(13)    On October 2, 2012, Schilling filed a second charge of discrimination with the EEOC. In this charge of discrimination, Schilling alleged disability discrimination in connection with her termination.

(14)    A Right to Sue Letter from the U.S. Department of Justice dated April 9, 2014 was issued in connection with Schilling's second charge of discrimination with the EEOC.

---

[2] Defendant objects and does agree to the addition of "Schilling's treating Chiropractor."

JURY INSTRUCTION NO. 3

**INTRODUCTION TO THE AMERICANS WITH DISABILITIES ACT**[3]

The Americans With Disabilities Act[4] (ADA) is "designed to remove barriers which prevent qualified individuals with disabilities from enjoying employment opportunities available to persons without disabilities."[5]   The ADA "seeks to eliminate unwarranted discrimination against disabled individuals in order both to guarantee those individuals equal opportunity and to provide the Nation with the benefit of their consequently increased productivity."[6]   The ADA provides that employers may not "discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment."[7]

The Supreme Court has established a three-step process for determining whether someone is disabled within the meaning of the ADA.[8]   First, the court must consider whether the condition in question constitutes a physical (mental is irrelevant in this case) impairment.[9] Second, the court must determine whether the plaintiff's life activity classifies as a "major life activity" under the ADA.[10]   Then, "tying the two statutory phrases together, [the court] ask[s] whether the impairment substantially limited the major life activity."[11]   Accordingly, determining whether someone is disabled must be done on a case-by-case basis.[12]

---

[3] Fifth Circuit Labor & Employment Law Pattern Jury Charges-ADA 11.7 (2009).
[4] 42 U.S.C. §§ 12101-12213.
[5] *Seaman v. CSPH, Inc.*, 179 F.3d 297, 300 (5th Cir. 1999).
[6] *Cleveland v. Policy Mgmt. Sys. Corp.*, 526 U.S. 795, 801 (1999).
[7] 42 U.S.C. § 12112(a).
[8] *Bragdon v. Abbott*, 524 U.S. 624, 631 (1998).
[9] *Bragdon v. Abbott*, 524 U.S. 624, 631 (1998).
[10] *Bragdon v. Abbott*, 524 U.S. 624, 631 (1998).
[11] *Bragdon v. Abbott*, 524 U.S. 624, 631 (1998).
[12] *Albertsons, Inc. v. Kirkinburg*, 527 U.S. 555, 565 (1999)

In addition to prohibiting discrimination based on a person's disabilities, real or perceived, the ADA imposes on employers the duty to make reasonable accommodations to individuals with disabilities if those accommodations will enable the individual to perform the essential functions of his or her job.[13] A reasonable accommodation may include: (A) making existing facilities used by employees readily accessible to and usable by individuals with disabilities; and (B) job restructuring, part-time or modified work schedules, reassignment to a vacant position, acquisition or modification or equipment or devices, appropriate adjustment or modification of examinations, training materials or policies, the provision of qualified readers or interpreters, and other similar accommodations for individuals with disabilities.[14]

---

[13] 42 U.S.C. § 12111(9). **Plaintiff objects to " if those accommodations will enable the individual to perform the essential functions of his or her job" in light of the Fifth Circuit's recent ruling, which states: Reasonable accommodations that employer may be required by the ADA to provide to disabled employees are not restricted to modifications that enable performance of essential job functions.** *Feist v. Dept. of Justice*, **730 F.3d 450 (5th Cir. 2013).**

[14] *Allen v. Rapides Parish Sch. Bd.*, 204 F.3d 619, 622 (5th Cir. 2000) (quoting 42 U.S.C. § 12111(9)).

# JURY INSTRUCTION NO. 4

## ADA—DISABILITY DISCRIMINATION[15]

1.    Judy Schilling claims she was discriminated against by the DOTD because of her disability.

2.    Specifically, Schilling claims that DOTD terminated her employment because of her disability.

3.    DOTD denies Plaintiff's claims and contends Plaintiff was non-disciplinarily removed from her position because she left work in October 2011, ran out of leave (sick and annual), and, despite communications with her attorney, failed to return to work. Plaintiff was non-disciplinarily removed from her position in May of 2012 pursuant to a policy that allows for the non-disciplinary removal of employees who have no leave and do not return to work.

      Plaintiff objects to this statement because it misstates Civil Service rule 12.10.

4.    It is unlawful to terminate a qualified individual with a disability because of the individual's disability.[16]

5.    To succeed in this case, Schilling must prove the following three items by a preponderance of the evidence:

      a.    Schilling has a disability;

      b.    Schilling was qualified for the job;

      c.    DOTD terminated Schilling because of her disability.

6.    Schilling does not have to prove that her disability was the only reason DOTD terminated Schilling.

7.    Disability means (1) a physical or mental impairment that substantially limits one or more major life activities; or (2) a record of such an impairment; or (3) being regarded as having such an impairment.[17]

---

[15] Fifth Circuit Labor & Employment Law Pattern Jury Charges-ADA 11.7.1 (2009).

[16] 42 U.S.C. § 12112.

[17] Coverage under the ADA can be established where an individual suffered an adverse employment action as the result of the myths, fears, and stereotypes associated with that individual's disability. 29 C.F.R. § 1630 app. § 1630.2(l) ("An individual rejected from a job because of the 'myths, fears and stereotypes' associated with disabilities would be covered under this part of the definition of disability. . ."); *Sch. Bd. of Nassau County v. Arline*, 480 U.S. 273, 284 (1987) ("Congress acknowledged that society's accumulated myths and fears about disability and

8.  "Physical or mental impairment" means: (1) any physiological disorder, or condition, cosmetic disfigurement, or anatomical loss affecting one or more of the following body systems: neurological, musculoskeletal, special sense organs, respiratory (including speech organs), cardiovascular, reproductive, digestive, genito-urinary, hemic and lymphatic, skin, and endocrine; or (2) any mental or psychological disorder, such as mental retardation, organic brain syndrome, emotional or mental illness, and specific learning disabilities. 29 C.F.R. § 1630.2(h).

9.  The term "substantially limits" is to be construed broadly in favor of expansive coverage and is not intended to be a demanding standard.[18]

10. An impairment need not present, or significantly or severely restrict the individual from performing major life activities in order to be considered substantially limiting.[19]

11. A person is substantially limited in a major life activity if she is (i) unable to perform the activity; or (ii) significantly restricted in the condition, manner, or duration under which she can perform the activity as compared to the average person in the general population.[20] The following factors should be considered in determining whether an individual is substantially limited in a major life activity: (i) the nature and severity of the impairment; (ii) the duration or expected duration of the impairment; and (iii) the permanent or long term impact, or the expected permanent or long term impact, of or resulting from the impairment.[21]

   a.  A major life activity[22] is an activity that is important or significant, but it does not necessarily have to be public, economic, or undertaken daily.[23] Major life activities are those basic activities that the average person in the general population can perform with little or no difficulty,[24] and they include, but are not limited to, such things as caring for oneself,[25] performing manual tasks that are central to daily life,[26] walking, seeing, hearing, speaking, breathing,

---

disease are as handicapping as are the physical limitations that flow from actual impairment."). Committee Note: Only the theories being advanced in the case need be submitted to the jury.

[18] 29 C.F.R. § 1630.2(j)(1)(2).

[19] 29 C.F.R. § 1630.2(j)(1)(ii).

[20] *Foreman v. Babcock & Wilcox Co.,* 117 F.3d 800, 805 (5th Cir. 1997) (citing 29 C.F.R. § 1630.2(j)(1)).

[21] 29 C.F.R. § 1630.2(j)(2).

[22] Although this instruction derives from 29 C.F.R. § 1630.2(j)(1), in most cases the issue of whether a given activity is a major life activity is not in dispute. If there is no dispute that the activity at issue in a particular case is a major life activity, or if the court finds that it is as a matter of law, the above list need not be submitted, and instead, the jury should be instructed that the particular activity in question is a major life activity.

[23] *Bragdon v. Abbott*, 524 U.S. 624, 638 (1998).

[24] 29 C.F.R. Part 1630 App., 29 C.F.R. § 1630.2(i).

[25] 29 C.F.R. §1630.2(i).

[26] *Toyota Motor Mfg., Kentucky, Inc. v. Williams*, 534 U.S. 184, 691 (2002) (interpreting 29 C.F.R. §1630.2(i)).

learning,[27] working, eating,[28] lifting, reaching, sitting, standing,[29] and reproduction.[30]

b.    A person has a record of such an impairment if she has a history of, or has been misclassified as having, a mental or physical impairment that substantially limits one or more major life activities.[31]

c.    A person is regarded as having such an impairment if she (i) has a physical or mental impairment that does not substantially limit major life activities, but is treated by Defendant as having a substantially limiting impairment; or (ii) has a physical or mental impairment that substantially limits one or more major life activities, but only because of the attitudes of others toward the impairment; or (iii) has no actual impairment at all, but is treated by Defendant as having a substantially limiting impairment.[32]

12.    A qualified individual is one who, with or without reasonable accommodations, can perform the essential functions of the job.[33] Qualified also means "that the individual satisfies the requisite skill, experience, education, and other job-related requirements of the employment position the individual holds or desires.

13.    Essential functions are those that are fundamental to the job at issue. The term does not include the marginal functions of a job. In deciding whether a function is essential, you may consider a variety of factors: (i) the reasons the job exists, (ii) the number of employees Defendant has to perform that kind of work, (iii) the degree of specialization the job requires, (iv) Defendant's judgment as to which functions are essential, (v) written job descriptions prepared before advertising or interviewing applicants for the position, (vi) the consequences of not requiring an employee to satisfy that function, and (vii) the work experience of others who held the position.[34] You may also consider other factors.[35]

---

[27] 29 C.F.R. §1630.2(i).

[28] *Waldrip v. Gen'l Elec. Co.*, 325 F.3d 652, 655 (5th Cir. 2003).

[29] *Pryor v. Trane Co.*, 138 F.3d 1024, 1026 (5th Cir. 1998).

[30] *Bragdon v. Abbott*, 524 U.S. 624, 638-639 (1998).

[31] 29 C.F.R. § 1630.2(k).

[32] *McInnis v. Alamo Cmty. Coll. Dist.*, 207 F.3d 276, 281 (5th Cir. 2000).

[33] *Rodriguez v. ConAgra Grocery Prods. Co.*, No. 04-11473, slip op. at 8 (5th Cir. Nov. 16, 2005); *Kapche v. City of San Antonio,* 176 F.3d 840, 843 (5th Cir. 1999); 29 C.F.R. § 1630.2(m). Committee Note: Qualified also means "that the individual satisfies the requisite skill, experience, education, and other job-related requirements of the employment position the individual holds or desires." *Id.* There is often no dispute on this part of the definition; however, if there is a dispute, this quoted language should be included in the instruction.

[34] *Kapche v. City of San Antonio,* 176 F.3d 840, 843 (5th Cir. 1999) (citing 29 C.F.R. § 1630.2(n)).

## JURY INSTRUCTION NO. 5

## ADA—FAILURE TO ACCOMMODATE[36]

1.    Schilling also asserts that the DOTD failed to reasonably accommodate her disability.

2.    DOTD denies Plaintiff's claims and contends that they offered Plaintiff several reasonable accommodations which Plaintiff refused or did not accept. DOTD also contends that Plaintiff was provided with a parking space as requested, allowed to wear slippers, offered various other accommodations which would have addressed her concerns with the noise in the office and offered various schedule changes at different times.

3.    The law requires employers to make reasonable accommodations for an employee's disability.[37] Defendant objects to the use of the word "prompt" since it is not a legal standard.

4.    To succeed in this case, Schilling must prove the following elements by a preponderance of the evidence:

    a.    Schilling had a disability;[38]

    b.    Schilling was qualified for the job;[39]

    c.    DOTD knew of Schilling's disability;[40]

    d.    Schilling requested an accommodation;[41]

    e.    A reasonable accommodation existed that would have allowed Schilling to perform the essential functions of the job;[42] and

    f.    DOTD failed to provide a reasonable accommodation.[43]

5.    A reasonable accommodation is one that is ordinarily reasonable, or reasonable in most cases.[44] Reasonable accommodations may include, for

---

[35] 29 C.F.R. § 1630.2(n); 29 C.F.R. § 1630 App. § 1630.2(n). Committee Note: The jury should not be instructed regarding essential functions when they are not disputed.
[36] Fifth Circuit Labor & Employment Law Pattern Jury Charges-ADA 11.7.2(2009).
[37] 42 U.S.C. § 12112(b)(5)(A).
[38] 42 U.S.C. § 12112(b)(5)(A).
[39] 42 U.S.C. § 12112(b)(5)(A).
[40] 42 U.S.C. § 12112(b)(5)(A).
[41] *Loulseged v. Azko Nobel Inc.*, 178 F.3d 731, 735 n.4, 736 n.5 (5th Cir. 1999).
[42] *Riel v. EDS Corp.*, 99 F.3d 678, 683 (5th Cir. 1997).
[43] 42 U.S.C. § 12112(b)(5)(A).
[44] *Riel v. EDS Corp.*, 99 F.3d 678, 683 (5th Cir. 1997).

example: (a) making existing facilities used by employees readily accessible to and usable by individuals with disabilities; or (b) job restructuring, part-time or modified work schedules, reassignment to a vacant position, acquisition or modification of equipment or devices, appropriate adjustment or modifications of examinations, training materials or policies, the provision of qualified readers or interpreters, and other similar accommodations for individuals with disabilities.[45]

6.  Once the Plaintiff has made a request for a reasonable accommodation, the ADA and its implementing regulations require that the parties engage in an "interactive process" to determine what precise accommodations are necessary.  This means that the employer "should first analyze the relevant job and the specific limitations imposed by the disability and then, in consultation with the individual, identify potential effective accommodations."  In essence, the employer and the employee must work together in good faith to help each other determine what, if any, accommodations are  necessary or appropriate.[46]

When an employer's unwillingness to engage in a good faith interactive process leads to a failure to reasonably accommodate an employee, the employer violates the ADA. [47]

7.  "A party that obstructs or delays the interactive process is not acting in good faith."[48] "An absence of good faith, including unreasonable delays caused by an employer, can serve as evidence of an ADA violation."[49]

8.  The EEOC Enforcement Guide, at 10 mandates that "an employer respond expeditiously to a request for a reasonable accommodation."[50]

9.  An employer may also violate the ADA where the employer's failure to reasonably accommodate an employee's disability causes the employee's condition to worsen or to be aggravated.[51]

10.  Unnecessary delays can result in a violation of the ADA.[52] Delay alone may give rise to liability for failure to accommodate even where a

---

[45] 42 U.S.C. 12111(9).
[46] See 29 C.F.R. 1630.2(o)(3) and § 1630 App., § 16309.
[47] *Jenkins v. Cleco Power, LLC*, 487 F.3d 309, 316 (5th Cir. 2007).
[48] *Beck v. Univ. of Wis. Bd. Of Regents*, 75 F.3d 1130, 1135 (7th Cir. 1996)
[49] *Pantazes v. Jackson*, 366 F. Supp. 2d 57, 70 (D.D.C. 2005).
[50] *Taylor v. Phoenixville Sch. Dist*., 174 F.3d 142, 164 (3d Cir. 1999).
[51] *Sturz v. Wisconsin Dept. of Corrections*, 642 F.Supp.2d 881, 891 (W.D. Wis. 2009); *Olian v. Board of Educ. of City of Chicago*, 631 F.Supp.2d 953, 963 (N.D. Ill. 2009); *Tobin v. Liberty Mut. Ins. Co*., 2007 WL 967860 (D. Mass. 2007); *Melluzzo v. Public Advocate, LLC,* 2006 WL 5159197 (M.D. Fla. May 31, 2006); *Worthington v. City of New Haven*, 994 F. Supp. 111, 114 (D. Conn. 1997); *Epstein v. Kalvin-Miller Intern., Inc.,* 139 F. Supp. 2d 469, 481 (S.D.N.Y. 2001).
[52] EEOC Enforcement Guidance at 10.

reasonable accommodation ultimately is provided.[53] Factors to consider in determining whether the accomodation was unnecessarily delayed include: the reasons for delay, the length of the delay, how much the employer and the employee contributed to the delay, the employer's actions during the delay, and whether the requested accommodation was simple or complex to provide.[54]

11.      Defendant claims Plaintiff's requested accommodation would have imposed an undue hardship on Defendant. An employer need not provide a reasonable accommodation if it can prove that the accommodation would impose an undue hardship on its business operations. Defendant has the burden of proving by a preponderance of the evidence that the accommodation would have imposed an undue hardship. [55]

12.      An "undue hardship" is an action requiring significant difficulty or expense. Factors to be considered include:[56] (a) the nature and cost of the accommodation; (b) the overall financial resources of the facility [or facilities] involved in the accommodation; the number of persons employed there; the effect on expenses and resources, or the impact otherwise on the facility's operation; (c) the overall financial resources of the Defendant; the overall size of the Defendant's business with respect to the number of employees; and the number, type, and location of Defendant's facilities; and (d) the type of operation [or operations] of Defendant, including the composition, structure, and functions of the Defendant's workforce; the geographic separateness, administrative, or fiscal relationship of the affected facility [or facilities] to the Defendant.[57]

---

[53] 56 Fed. Reg. 35,748 (1991);

[54] EEOC Enforcement Guidance at 10; *Selenke v. Med. Imaging of Colo.,* 248 F.3d 1249, 1262-63 (10th Cir. 2001); *Krocka v. Riegler,* 958 F. Supp. 133, 1342 (N.D. Ill. 1997).

[55] For the remaining applicable ADA instructions refer to paragraphs 6 through 7 and subparts within section 11.7.1.

[56] 42 U.S.C. § 12111(10)(B).

[57] This instruction should be utilized where the defendant has asserted the affirmative defense of undue hardship.

# JURY INSTRUCTION NO. 6

## ADA—DISABILITY HARASSMENT—
## CO-WORKER/DIRECT AND NON-DIRECT SUPERVISOR/THIRD-PARTY
## DISABILITY HARASSMENT (HOSTILE WORK ENVIRONMENT)[58]

1. Schilling claims she was harassed by Sheila Tate because of her disability, and that her employer, DOTD, knew or in the exercise of reasonable care should have known of the harassment, but did not take prompt remedial action. Defendant objects to the use of the word "effective."

2. DOTD denies Plaintiff's claims and contends that Plaintiff cannot prove that the behaviors she contends are harassment rise to the level of harassment. DOTD further contends that their behavior was not based on Plaintiff's alleged disability, but was based on legitimate non-discriminatory reasons.

3. Unlawful discrimination against an employee because of the employee's disability includes disability harassment.

4. For DOTD to be liable for disability harassment, the conduct must be sufficiently severe or pervasive to alter the terms or conditions of Schilling's employment and create a hostile or abusive work environment.[59] To determine whether the conduct in this case rises to a level that alters the terms or conditions of Schilling's employment, you should consider all the circumstances, including: the frequency of the conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with Plaintiff's work performance.[60]

5. In determining whether a hostile work environment existed, you must consider the evidence from both Schilling's perspective and from the perspective of a reasonable person. First, Schilling must actually find the conduct offensive. Next, you must look at the evidence from the perspective of a reasonable person's reaction to a similar environment under similar circumstances. You cannot view the evidence from the

---

[58]Fifth Circuit Labor & Employment Law Pattern Jury Charges-ADA 11.7.3(2009).
The Fifth Circuit has recognized a cause of action for disability harassment under the ADA. *Flowers v. S. Reg'l Physicians Servs., Inc.*, 247 F.3d 229, 235-36 (5th Cir. 2001). Although tried shortly after *Faragher and Ellerth* were decided, *Flowers* appears to have been tried solely under a negligence theory, and the Fifth Circuit's decision on appeal addresses only the negligence theory of disability harassment. As *Flowers* is the only published Fifth Circuit opinion available to the Committee at the time these charges were submitted, the Committee did not prepare disability harassment charges under any other theory. Given that many cases interchange the theories in both Title VII and the ADA, the Committee recognizes future cases may provide more guidance on not only the application of theories to disability harassment, but also their viability.
[59] *Flowers v. S. Reg'l Physician Servs., Inc.*, 247 F.3d 229,235-236 (5th Cir. 2001); *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 66-67 (1986).
[60] *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993).

perspective of an overly sensitive person, nor can you view the evidence from the perspective of someone who is never offended. Rather, the alleged harassing behavior must be such that a reasonable person in the same or similar circumstances as Schilling would find the conduct offensive.[61]

6.      If Schilling proves she was harassed because of her disability, then you must decide whether DOTD is liable. To be liable, Schilling must prove (a) DOTD either knew of the harassment, or in the exercise of reasonable care should have known of the harassment, and (b) DOTD failed to take prompt remedial action.[62] Again, defendant objects to the use of the word "effective."

7.      In determining whether DOTD knew or should have known of the harassment, Schilling must prove that (a) the harassment was known or communicated to a person who had the authority to receive, address, or report the complaint, even if that person did not do so,[63] or (b) the harassment was so open and obvious that DOTD should have known of it.[64]

8.      Prompt remedial action is conduct by the DOTD that is reasonably calculated to stop the harassment and remedy the situation. Whether DOTD's actions were prompt and remedial depends upon the particular facts, and you may look at, among other things, the effectiveness of any actions taken.[65]

---

[61] *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 81 (1998).
[62] *Shepherd v. Comptroller of Pub. Accounts*, 168 F.3d 871, 873 (5th Cir. 1999); *Williamson v. City of Houston*, 148 F.3d 462, 465-66 (5th Cir. 1998).
[63] *Williamson v. City of Houston*, 148 F.3d 462, 466-67 (5th Cir. 1998)
[64] *Pfau v. Reed*, 125 F.3d 929 (5th Cir. 1997); *Sharp v. City of Houston*, 164 F.3d 923, 929 (5th Cir. 1999).
[65] *See Waltman v. Int'l Paper Co.*, 875 F.2d 468, 477 (5th Cir. 1989). For remaining applicable ADA instructions refer to paragraphs 6 through 7 and subparts within section 11.7.1.

# JURY INSTRUCTION NO. 7

## ADA DAMAGES[66]

1.      If you found that DOTD violated the ADA, then you must determine whether DOTD has caused Schilling damages and, if so, you must determine the amount, if any, of those damages.

2.      Schilling must prove her damages by a preponderance of the evidence. Your award must be based on evidence and not speculation or guesswork. On the other hand, Schilling need not prove the amount of her losses with mathematical precision, but only with as much definitiveness and accuracy as the circumstances permit.[67]

3.      You should consider the following elements of damages, and no others: (1) economic loss, which includes back pay and benefits; (2) punitive damages, (3) compensatory damages, which include emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses, and (4) physical pain and suffering.[68]

        Defendant objects to "physical pain and suffering."

4.      Back pay and benefits include the amounts the evidence shows Schilling would have earned had she remained an employee of DOTD, and includes fringe benefits such as life and health insurance, stock options, contributions to retirement, etc., minus the amounts of earnings and benefits, if any, DOTD proves by a preponderance of the evidence, Schilling received in the interim.[69]

5.      Defendant asserts that Plaintiff failed to mitigate [his/her] damages.[70] To prevail on this defense, Defendant must show, by a preponderance of the evidence, that:  (a) there were "substantially equivalent employment" positions available; (b) Plaintiff failed to use reasonable diligence in seeking those positions; and (c) the amount by which Plaintiff's damages were increased by [his/her] failure to take such reasonable actions.[71]

6.      "Substantially equivalent employment" means a job that has virtually identical promotional opportunities, compensation, job responsibilities, working conditions, and status as the job [he/she] [lost/was denied].

---

[66] Fifth Circuit Labor & Employment Law Pattern Jury Charges-ADA 11.8(2009).

[67] *United States v. U.S. Steel*, 520 F.2d 1043, 1050 (5th Cir. 1975).

[68] Section 1981a also provides that a plaintiff may recover for "future pecuniary losses," which by definition does not include front pay.  *Pollard v. E.I. DuPont de Numours & Co.*, 532 U.S. 843 (2001).

[69] *Marks v. Prattco*, 633 F.2d 1122, 1125 (5th Cir. 1981).

[70] This instruction should be used only when Defendant asserts the affirmative defense that Plaintiff failed to mitigate his or her damages.

[71] *50-Off Stores, Inc. v. Banques Paribas (Suisse), S.A.*, 180 F.3d 247, 258 (5th Cir. 1999); *Floca v. Homecare Health Servs., Inc.*, 845 F.2d 108 (5th Cir. 1988); *Ballard v. El Dorado Tire Co.*, 512 F.2d 901, 906 (5th Cir.1975).

Plaintiff does not have to accept a job that is dissimilar to the one [he/she] [lost/was denied], one that would be a demotion, or one that would be demeaning. [72] The reasonableness of Plaintiff's diligence should be evaluated in light of the individual characteristics of Plaintiff and the job market. [73]

7.     There is no exact standard for determining compensatory damages. You are to determine an amount that will fairly compensate Schilling for any injury she has sustained. [74]

---

[72] *Ford Motor Co. v. EEOC*, 458 U.S. 219 (1982).
[73] *Sellers v. Delgado Coll.*, 902 F.2d 1189, 1993 (5th Cir. 1999).
[74] SEVENTH CIR. PATTERN JURY INSTR. 7.23

# JURY INSTRUCTION NO. 7

## RETALIATION[75]

1. Schilling claims DOTD violated federal law by retaliating against her for engaging in protected activities, namely, requesting accommodations, filing an EEOC complaint and filing an internal discrimination complaint against her supervisor, Shelia Tate. Requesting accommodations, filing an EEOC charge and filing an internal discrimination complaint against her supervisor, Shelia Tate, are "protected activities."

2. DOTD denies Plaintiff's claims and contends that Plaintiff cannot prove causation. DOTD also contends it had a legitimate, non-discriminatory reason for its actions and that Plaintiff cannot prove that "but for" the protected activity DOTD would not have taken the actions it did.

   Plaintiff wishes to add that: But-for cause" does not mean "sole cause" for the adverse action.[76]

3. To succeed on this claim, Schilling must prove by a preponderance of the evidence that:

   a.   Schilling engaged in a protected activity;

   b.   DOTD took adverse action against Schilling;

   c.   There is a causal link between the protected activity and the adverse employment action.[77]

4. Requesting accommodations, filing an EEOC complaint and filing a discrimination complaint are "protected activities."

5. An "adverse action" includes employer actions that are materially adverse to a reasonable employee or job applicant; that is, the action must be harmful to the point it could well dissuade a reasonable worker from making or supporting a charge of discrimination. An adverse action by a supervisor is an action of the employer. Adverse action includes termination.

6. A causal link is established when the evidence demonstrates that the employer's decision to terminate was based in part on knowledge of the employee's protected activity. [78]

---

[75] McNamara & Southerland, Federal Employment Jury Instructions, (Vol. 2) § 4:671.
[76] *Leal v. McHugh*, 731 F.3d 405 (5th Cir. 2013).
[77] *Royal v. CCC & R Tires Arboles, L.L.C.*, 736 F.3d 396 (5th Cir, 2013).
[78] *Medina v. Ramsey Steel Co., Inc.*, 238 F.3d 674, 685 (5th Cir. 2001) and *Sherrod v. American Airlines, Inc.*, 132 F.2d 1112 (5th Cir. 1998).

7.  Schilling is not required to produce direct evidence of unlawful motive. You may infer knowledge and/or motive as a matter of reason and common sense from the existence of other facts, for example, explanations that were given that you find were really pretexual. "Pretextual" means false or, though true, not the real reason for the actions taken.

## JURY INSTRUCTION NO. 8

### 2.18 Consideration of the Evidence
from the 5th Circuit's Pattern Jury Instructions

## JURY INSTRUCTION NO. 9

### 2.23 Deposition Testimony
from the 5th Circuit's Pattern Jury Instructions

## JURY INSTRUCTION NO. 10

### 11.7.4- ADA-Business Necessity Defense
From Fifth Circuit Labor & Employment Law Pattern Jury Charges—ADA (2009)

## JURY INSTRUCTION NO. 11

### 2.11    Duty to Deliberate
Fifth Circuit Pattern Jury Instructions – Civil

## JURY INSTRUCTION NO. 12
### 2.12    Instructions on Deliberation
Fifth Circuit Pattern Jury Instructions – Civil

**Plaintiff objects to this instruction because it is duplicative and requiring the instruction to be read twice would waste time. This instruction is included (verbatim) in Jury Instruction No. 1, paragraphs 11-13. Therefore, Plaintiff respectfully requests that this instruction not be read to the jury twice.**

## JURY INSTRUCTION NO. 13

### 2.13    Bias – State Defendant Involved
Fifth Circuit Pattern Jury Instructions – Civil

## JURY INSTRUCTION NO. 14

### 2.16    Impeachment by Inconsistent Statement
Fifth Circuit Pattern Jury Instructions – Civil

**Plaintiff objects to this instruction because it is duplicative and requiring the instruction to be read twice would waste time. This instruction is included (verbatim) in Jury Instruction**

**No. 1, paragraph 5. Therefore, Plaintiff respectfully requests that this instruction not be read to the jury twice.**

## JURY INSTRUCTION NO. 15

**2.19     Expert Witnesses**
Fifth Circuit Pattern Jury Instructions – Civil

## JURY INSTRUCTION NO. 16

**2.20     Burden of Proof When Only Plaintiff Has Burden**
Fifth Circuit Pattern Jury Instructions – Civil

## JURY INSTRUCTION NO. 17

**2.22     Cautionary Instruction on Damages**
Fifth Circuit Pattern Jury Instructions – Civil

## JURY INSTRUCTION NO. 18

**15.1     Consider Damages Only If Necessary**
Fifth Circuit Pattern Jury Instructions – Civil

## JURY INSTRUCTION NO. 19

**15.2     Compensatory Damages**
Fifth Circuit Pattern Jury Instructions – Civil

## JURY INSTRUCTION NO. 20

**15.15     Mitigation of Damages**
Fifth Circuit Pattern Jury Instructions – Civil

**Plaintiff objects to this instruction because it will not be supported by the evidence since the Defendant has no evidence of any failure to mitigate damages. Therefore, Plaintiff respectfully requests that this instruction not be read to the jury.**

## JURY INSTRUCTION NO. 21

**15.7 Lost Earnings**
from the 5th Circuit's Pattern Jury Instructions - Civil

PROPOSED JURY CHARGE NO. 1

An employer does not have to provide the "best" accommodation possible or even exactly what the employee requested. *Griffin v. UPS,* 661 F.3d 216, 222 (5th Cir. 2011); *EEOC v. Argo Distribution, LLC*, 555 F.3d 462, 471 (5th Cir. 2009)(citing 29 C.F.R. pt. 1630, App. § 1630.9).

**Plaintiff objects to this proposed jury charge because it does not explain what the employer is required to provide.**

PROPOSED JURY CHARGE NO. 2

"The ADA provides a right to reasonable accommodation, not to the employee's preferred accommodation." The employer has the ultimate discretion to choose between effective accommodations and may choose an accommodation that is less expensive or easier to provide. *EEOC v. Argo Distribution, LLC*, 555 F.3d 462, 471 (5th Cir. 2009)(citing 29 C.F.R. pt. 1630, App. § 1630.9).

PROPOSED JURY CHARGE NO. 3

The interactive process is an informal one. *See Griffin v. United Parcel Serv., Inc.*, 661 F.3d 216, 224 (5th Cir. 2011)(citing *Loulseged*, 178 F.3d at 736). This process requires not only input from the employee, but the employer as well. *Loulseged v. Akzo Nobel Inc.*, 178 F.3d 731, 737 (5th Cir. 1999).

PROPOSED JURY CHARGE NO. 4

During the interactive process, the employer is permitted to move at "whatever pace he chooses as long as the ultimate problem—the employee's performance of her duties—is not truly imminent. *Loulseged v. Akzo Nobel Inc.*, 178 F.3d 731, 737 (5th Cir. 1999).

**Plaintiff objects to this jury charge because the accommodation must be prompt.**

<u>PROPOSED JURY CHARGE NO. 5</u>

During the informal interactive process, both the employer and the employee share responsibility. When the responsibility for the breakdown of the interactive process can be traced to the employee, courts have held that an employer cannot be found to have violated the ADA. *Loulseged v. Akzo Nobel Inc.*, 178 F.3d 731, 737 (5th Cir. 1999).

<u>PROPOSED JURY CHARGE NO. 6</u>

In order to recover compensatory damages for ADA violations, a plaintiff must prove that the discrimination was intentional. *Delano–Pyle v. Victoria County, Tex.,* 302 F.3d 567, 574 (5th Cir.2002).

<u>PROPOSED JURY CHARGE NO. 7</u>

If you find that defendant violated Plaintiff's rights under the ADA, but that Plaintiff did not prove that she suffered any actual injuries, then you may still award nominal damages to Plaintiff. Nominal damages are not to exceed one dollar ($1.00). If you return a verdict for [plaintiff], but [plaintiff] has failed to prove actual injury and therefore is not entitled to compensatory damages, then you must award nominal damages of $1.00.

A person whose federal rights were violated is entitled to a recognition of that violation, even if she suffered no actual injury. Nominal damages (of $1.00) are designed to acknowledge the deprivation of a federal right, even where no actual injury occurred.

Model Civ. Jury Instr. 3rd Cir. 9.4.5 (2011), Model Civ. Jury Instr. 3rd Cir. 9.4.5 (2011)

**Plaintiff objects to this jury charge because there is no cap on nominal damages.**

## PROPOSED JURY CHARGE NO. 8

To recover more than nominal damages for emotional harm, a plaintiff must provide proof of "actual injury" resulting from the harassment. *Flowers v. S. Reg'l Physician Servs. Inc.*, 247 F.3d 229, 238-39 (5th Cir. 2001).

## PROPOSED JURY CHARGE NO. 9

Emotional harm will not be presumed simply because the plaintiff is a victim of discrimination. To demonstrate an actual, or "specific discernable," injury, "[t]he existence, nature, and severity of emotional harm" must be proved. *Flowers v. S. Reg'l Physician Servs. Inc.*, 247 F.3d 229, 238-39 (5th Cir. 2001)

## PROPOSED JURY CHARGE NO. 10

A covered employer must provide reasonable accommodations to an otherwise qualified person with a disability unless the employer can show that the accommodation "would impose an undue hardship" on the employer. 42 U.S.C. § 12112(b)(5)(A). Defendant has the burden of proving undue hardship. EEOC Enforcement Guidance at 10.

## PROPOSED JURY CHARGE NO. 11

The plaintiff bears the burden of requesting reasonable accommodations. *Jenkins v. Cleco Power, LLC,* 487 F.3d 309, 315 (5th Cir. 2007).

## PROPOSED JURY CHARGE NO. 12

The employee who needs an accommodation because of a disability has the responsibility of informing her employer. *Rommel E. Griffin, Sr. v. United Parcel Service, Inc.,* 661 F.3d 216 (5th Cir. 2011).

## PROPOSED JURY CHARGE NO. 13

To prove defendant retaliated against her, the plaintiff must prove that "but for" the protected activity, the adverse action would not have occurred. *Univ. of Texas Sw. Med. Ctr. v. Nassar*, 133 S. Ct. 2517, 2534, 186 L. Ed. 2d 503 (2013); *Feist v. Louisiana, Dep't of Justice, Office of the Atty. Gen.*, 730 F.3d 450, 454 (5th Cir. 2013)(applying but for analysis to retaliation claim under the ADA).

## PROPOSED JURY CHARGE NO. 14

The ADA defines a disability as "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(1). Major life activities include "caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." *Id.* § 12102(2)(A).

## PROPOSED JURY CHARGE NO. 15

Thinking and concentrating qualify as 'major life activities' under the ADA."). *.E.E. O.C. v. Chevron Phillips Chem. Co., L.P.,* 570 F.3d 606, (5th Cir.2009) *Head v. Glacier N'west,* 413 F.3d 1053, 1061 (9th Cir.2005); *Taylor v. Phoenixville Sch. Dist.,* 184 F.3d 296, 307 (3d Cir.1999).

***Defendant objects that this is covered by Jury Charge No.14***

## PROPOSED JURY CHARGE NO. 16

In failure to accommodate cases, a Plaintiff need not prove an adverse employment action or that she was treated differently from similarly situated employees. *Hardin v. CHRISTUS Health Southeast Tex. St. Elizabeth,* No. 1:10–CV–596, 2012 U.S. Dist. LEXIS 31444, at *19 n.

3, 2012 WL 760642 (E. D. Tex. Jan. 6, 2012) (citing *Bridges v. Dep't of Social Servs.,* 254 F.3d 71, 2001 WL 502797, at *1 (5th Cir.2001)).

**Defendant objects to this charge as it mischaracterizes the law.**

PROPOSED JURY CHARGE NO. 17

Plaintiff in a retaliation claim "may also rely upon 'a chronology of events from which retaliation may plausibly be inferred." *Jordan v. Ector County*, 516 F.3d 290, 301 (5th Cir. 2008). The intervening period of other evidence of retaliatory animus...evidence of recurring retaliatory animus during the intervening period can be sufficient to satisfy the elements of causation" in a retaliation case. *Lettieri v Equant Incorporated*, 428 F.3d 640 (4th Cir. 2007) Also, "A 'causal link' is established when the evidence demonstrates that the 'employer's decision to terminate was based in part on knowledge of the employee's protected activity..." *Mendina v. Ramsey Steel Co., Inc*., 238 F.3d 674, 684 (5th Cir. 2001) and *Sherrod v. American Airlines, Inc*., 132 F.2d 1112 (5th Cir. 1998).

**Defendant objects to this charge since is mischaracterizes the law and cites non-Fifth Circuit cases.**

PROPOSED JURY CHARGE NO. 18

"The fact that an EEOC investigator, trained and experienced in the area of discriminatory practices and the various methods by which they can be secreted, has found that it is likely that such an unlawful practice has occurred, is highly probative of the ultimate issue involved in such cases. *Smith v. Universal Services, Inc*., 454 F.2d 154, 157 (5th Cir. 1972).

**Defendant objects to this charge because it is for the Court to make the decision regarding the probative value of such evidence and the charge mischaracterizes the law.**

## PROPOSED JURY CHARGE NO. 19

The term "discriminate" includes "not making reasonable accommodations to known physical or mental limitations of an otherwise qualified individual with a disability... " 42 U.S.C. §12112(b)(6).

**Defendant objects that this charge is duplicative.**

## PROPOSED JURY CHARGE NO. 20

A reasonable accommodation is one that is ordinarily reasonable, or reasonable in most cases. *Riel v. EDS Corp*., 99 F.3d 678, 683 (5th Cir. 1997). Reasonable accommodation includes a modification or adjustment to the work environment or the manner or circumstances under which the job is held or performed." 29 C.F.R. §1630(o). A request for a reserved parking space may constitute a reasonable request for accommodation . 29 C.F.R. pt. 1630 App., § 1630.2(o); *Feist v. Dept. of Justice*, 730 F.3d 450 (5th Cir. 2013). A request for a modified work schedule may constitute a reasonable request for accommodation . 42 U.S.C. §12111(9); *Turner v. Hershey Chocolate USA,* 440 F.3d 604 (3d Cir. 2006).

**Defendant objects that this charge mischaracterizes the law and seeks to have the jury apply law from other circuits.**

## PROPOSED JURY CHARGE NO. 21

Reasonable accommodations that an employer may be required by the ADA to provide to disabled employees are not restricted to modifications that enable performance of essential job functions. *Feist v. Dept. of Justice*, 730 F.3d 450 (5th Cir. 2013).

An employer may be liable under the ADA if it refuses a disabled employee's requested accommodations and/or fired her without giving them any consideration. *EEOC v. Chevron Phillips Chemical Co*., 570 F.3d 606 (5th Cir. 2009

**Defendant objects that this charge mischaracterizes the law.**

<u>PROPOSED JURY CHARGE NO. 22</u>

In making a request for reasonable accommodation, an employer may not simply reject proposed accommodations without offering other suggestions or expressing a willingness to discuss possible accommodations. *EEOC v. Sears, Roebuck & Co*., 417 F.3d 789, 806 (7th Cir. 2005); see also *Humphrey v. Memorial Hospital Assn*., 239 F.3d 1128, 1138-39 (9th Cir. 2001). The focus of inquiry as to whether an employer has provided adequate accommodation under the ADA that is sufficient to meet job-related needs of an individual being accommodated. *Harvey v. Wal-Mart Louisiana, LLC*, 665 F. Supp. 2d 655 (W.D. La. Sept. 20, 2009).

**Defendant objects that the law cited is not relevant to this case as the cases cited are not in the Fifth Circuit. Defendant also objects that a Western District of Louisiana case is not controlling precedent for the Middle District of Louisiana.**

<u>PROPOSED JURY CHARGE NO. 23</u>

The employee must explain that the adjustment in working conditions or duties she is seeking is for a medical condition-related reason, but the employee does not have to mention the ADA or use the phrase "reasonable accommodation." Plain English will suffice. *See* EEOC "Requesting Reasonable Accommodation" *in* Enforcement Guidance: Reasonable Accommodation and Undue Hardship Under the ADA (Oct. 17, 2002),*available at* http://www.eeoc.gov/policy/docs/accommodation.html. *EEOC v. Chevron Phillips Chem. Co*., 570 F.3d 606, 621(5th Cir. 2009).

<u>PROPOSED JURY CHARGE NO. 24</u>

An employer's actions (and inaction) within the interactive process remain highly relevant to the merits of any potential failure to accommodate claim. *EEOC v. Sears, Roebuck & Co.*, 417 F.3d 789, 805 (7th Cir. 2005); *Fjellestad v. Pizza Hut of Am.*, 188 F.3d 944, 952 (8th

Cir. 1999); *Willis v. Conopco, Inc*., 108 F.3d 282, 285 (11th Cir. 1997).

**Defendant objects since the cases cited are not from the Fifth Circuit and are a mischaracterization of the law.**

PROPOSED JURY CHARGE NO. 25

When an employer does not engage in a good faith interactive process to accommodate an employee's disability, then that employer violates the ADA, including when the employer discharges the employee instead of considering the requested accommodations. Once the employee presents a request for an accommodation, the employer is required to engage in the interactive process so that together they can determine what reasonable accommodations might be available. *EEOC v. Chevron Phillips Chemical Co*., 570 F.3d 606 (5th Cir. 2009).

**Defendant objects that this charge is irrelevant.**

PROPOSED JURY CHARGE NO. 26

The duty to provide a reasonable accommodation to an individual with a disability is a continuing one. It does not end with the provision of an accommodation. See *Humphrey v. Memorial Hospital Assn*., 239 F.3d 1128, 1138 (9th Cir. 2001) An employer's duty to make reasonable accommodations is a continuing one, and will not be satisfied by a single effort. *Id*.

***Defendant objects that this charge is not applicable in the Fifth Circuit.***

PROPOSED JURY CHARGE NO. 27

The "but-for" standard does not mean "sole cause" *Leal v. McHugh*, 731 F.3d 405 (5th Cir. 2013.

**Defendant objects that this is a mischaracterization of the law.**